d

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **NISAR AHMAD HAMIDI #A249-121-529, Plaintiff** | **CIVIL DOCKET NO. 6:26-CV-00702 SEC P** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **IMMIGRATION & CUSTOMS ENFORCEMENT, Defendants** | **MAGISTRATE JUDGE PEREZ-MONTES** |

---

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) under 28 U.S.C. § 2241 filed by Petitioner Nisar Ahmad Hamidi ("Hamidi" or "Petitioner"), an immigration detainee at the Pine Prairie ICE Processing Center in Pine Prairie, Louisiana. Petitioner challenges his continued post-removal-order detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and seeks release from custody.

Petitioner has carried his initial burden under *Zadvydas* to show that there is no significant likelihood of removal in the reasonably foreseeable future. The Government has not rebutted that showing. Therefore, the Petition should be GRANTED, and Petitioner should be RELEASED within seven days under appropriate conditions of supervision.

## I. Background

Petitioner is a native and citizen of Afghanistan who entered the United States without inspection or parole on November 21, 2024. ECF No. 10-1 at 1. Shortly

thereafter, the Department of Homeland Security ("DHS") issued a negative credible fear determination. *Id.* An Immigration Judge affirmed that determination on December 20, 2024, and returned Petitioner's case to DHS for removal. *Id.* Petitioner is currently detained, and has remained so since, at the latest, February 19, 2025.[1]

In January 2025, Enforcement and Removal Operations ("ERO") prepared Petitioner's file for removal, approved an electronic travel authorization, and forwarded the file to the "Travel Team" to make commercial arrangements. ECF No. 10-1 at 1–2. This removal effort stalled, however, because the Consular Affairs Office had not approved Petitioner's removal flight and a Special High-Risk Charter had been canceled. *Id.*

The next month, ERO scheduled Petitioner for removal through the United Arab Emirates. ECF No. 10-1 at 2. That potential removal was also canceled because Petitioner's passport was expired and his family was not able to obtain a new passport for him. *See id.*

On September 12, 2025, ERO submitted a request for an Afghan travel document through the United States Embassy in Doha, Qatar. *Id.* at 2-3. ERO followed up on the request several times without success. *See id.* Petitioner alleges that he provided ICE with all requested information. ECF No. 1 at 7.

[1] The Government states that Petitioner has been detained since February 19, 2025. ECF No. 10 at 1. Petitioner, however, states that he has remained detained since November 21, 2024. ECF No. 1 at 5.

ERO then began pursuing "third country" removal. On February 18, 2026, ERO requested assistance from the State Department and obtained information from Petitioner concerning family members residing in other countries. The next day, ERO acknowledged the request and advised that it would be forwarded to an appropriate decision-maker. ECF No. 10-1 at 3.

In March 2026, Petitioner advised ERO that his family had obtained a passport from the Afghan Embassy. ERO received the passport on April 27, 2026, but determined that it had expired on April 23, 2025. ERO then continued to seek updates regarding Petitioner's travel-document request and submitted additional identification documents. ECF No. 10-1 at 3.

Neither Petitioner's removal to Afghanistan nor his removal to a third country has been scheduled. The Government claims, however, that DHS continues to work toward removal and that Petitioner's case has been elevated for consideration of removal pursuant to a third-country removal agreement. ECF No. 10-1 at 3.

## II. <u>Law and Analysis</u>

Petitioner does not ask the Court to vacate, review, or stay the removal order. He challenges only his continued post-removal-order detention. The Court has jurisdiction to consider that challenge. *See Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *6 (S.D. Tex. Jan. 28, 2026) ("Mr. Nguyen contests only his post-removal-period detention . . . rather than any aspect of his underlying removal order

or the decision by DHS to execute it. Thus, . . . the Court retains jurisdiction to review his detention.").[2]

After entry of a final removal order, the Government ordinarily has 90 days to effectuate removal. *See* 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(6), however, permits detention beyond 90 days for a period reasonably necessary to bring about a detainee's removal. *See Zadvydas*, 533 U.S. at 689, 701. Detention for up to six months is "presumptively reasonable." *Id.* at 701. Thereafter, if a detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must respond with evidence sufficient to rebut that showing. *Id.*; *see also* 8 C.F.R. § 241.13.

The petitioner bears the initial burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). Conclusory statements do not satisfy that burden. *See id.* at 543–44.

However, a petitioner is not required to "show the absence of any prospect of removal—no matter how unlikely or unforeseeable." *Zadvydas*, 533 U.S. at 702 (emphasis omitted). Rather, the petitioner must only establish good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

[2] *See also Kokoreva v. Unknown Party*, No. 3:25-CV-1700, 2025 WL 2981626, at *2 (N.D. Tex. Oct. 7, 2025) ("[T]he Court retains jurisdiction to review a noncitizen's detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition.") (quotation omitted), *report and recommendation adopted*, 2025 WL 2980642 (N.D. Tex. Oct. 22, 2025); *Yousef v. Warden Richwood Corr. Ctr.*, No. 25-CV-1947, 2025 WL 3784489, at *2 (W.D. La. Dec. 10, 2025), *report and recommendation adopted*, 2026 WL 19378 (W.D. La. Jan. 2, 2026).

*Id.* at 701. Removal is not reasonably foreseeable merely because the Government continues removal efforts. *See id.* at 702.[3]

Here, Petitioner's removal order became final on December 20, 2024. ECF No. 10-1 at 1. Although the parties disagree as to whether his detention began in November 2024 or February 2025, his detention has extended well beyond six months. Therefore, it is no longer presumptively reasonable under *Zadvydas*. *See Shengelia v. Ortega*, No. 5:25-CV-1545, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025); *see also Altayb v. U.S. Immigr. & Customs Enf't*, No. 1:25-CV-01615, 2026 WL 550093, at *1 (W.D. La. Feb. 9, 2026), *report and recommendation adopted*, 2026 WL 544292 (W.D. La. Feb. 26, 2026). And as the period of post-removal confinement grows, what counts as the "reasonably foreseeable future" correspondingly shrinks. *See Zadvydas*, 533 U.S. at 701.

The Court must next address whether Petitioner has established that there is no significant likelihood of removal in the reasonably foreseeable future. The inquiry is practical and record-specific, and it hinges upon the likelihood that removal will occur, not upon the Government's efforts or intentions to remove a detainee. *See Zadvydas*, 533 U.S. at 701–02; *Khurami*, 2026 WL 2122961, at *3.

Petitioner has shown that there is no significant likelihood of his removal in the reasonably foreseeable future. ICE has attempted to remove Petitioner since

---

[3] *Lambert v. Warden*, No. EP-26-CV-00427-DB, 2026 WL 926216, at *3 (W.D. Tex. Apr. 6, 2026); *see also Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779, 807 (M.D. La. 2026) ("'[C]ontinued efforts' or good faith efforts are not enough; *Zadvydas* itself rejected this idea."). The question is not whether ICE has acted diligently, but whether removal is actually likely to occur in the near future. *See Khurami v. Garcia*, No. 1:25-CV-01672, 2026 WL 2122961, at *3 (W.D. La. July 1, 2026).

December 2024. ICE canceled the last attempted removal in August 2025. ECF No. 10-1 at 2. Prior efforts aside, the record reflects only that ICE has requested an Afghan travel document. That request has remained unanswered. ECF No. 10-1 at 2–3. And although ICE began pursuing third-country removal in February 2026, the Government has not identified a third country willing to accept Petitioner. ECF No. 10-1 at 3.

The burden therefore shifts to the Government to show a significant likelihood of removal in the reasonably foreseeable future. It has not done so.

The Government argues that Petitioner has not satisfied his initial burden because he offers only conclusory assertions that his removal is unlikely. ECF No. 10 at 5–6. But Petitioner's showing rests – as it must – in large part on the Government's own record. And in summary, the record shows simply that ICE has twice attempted and failed to remove Petitioner despite his cooperation, and that ICE is still apparently attempting, without success, to effectuate third-country removal.

However, a petitioner can carry the *Zadvydas* burden by identifying particular barriers to repatriation, and showing that ICE has not identified a third country willing to accept that petitioner's removal. *See Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 705–06 (W.D. Tex. 2025) (allegations identifying a particular barrier to repatriation, and that ICE had not identified a country for removal, were not conclusory). And the Government's argument that it is "actively working" toward removal does not alter that result, because it does not actually address when, or if, removal may occur. *See Shengelia*, 2025 WL 3654368, at *3–4

(declaration that ICE was "actively working" to secure third-country removal did not carry the Government's burden where the Government produced no acceptances, travel documents, timelines, or scheduled removal). Other courts have held that a pending request for travel documents alone is insufficient to satisfy the Government's burden.[4]

Moreover, the Supreme Court's recent order in *Dep't of Homeland Sec. v. D.V.D.*, No. 26-426, 2026 WL 2917860 (U.S. Sept. 29, 2026) (mem.), does not require a different result. The Court: stayed a district court's judgment concerning the Government's third-country-removal guidance; treated the stay application as a petition for a writ of certiorari; granted it; and directed briefing on, among other questions, jurisdiction, the scope of 8 U.S.C. § 1252(f)(1), and the lawfulness of the guidance. But the Court did not decide those questions or otherwise address the merits or questions presented here. Petitioner seeks individual habeas relief under *Zadvydas*; he does not seek classwide relief, APA vacatur, or invalidation of any

[4] *See Zheng v. Bondi*, No. 3:26-CV-00239, 2026 WL 2529544, at *2 (W.D. La. July 29, 2026); *Nguyen v. Bowen*, No. 25-CV-1560, 2026 WL 1179066, at *5 (W.D. La. Apr. 14, 2026) ("Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming"), *report and recommendation adopted*, 2026 WL 1172680 (W.D. La. Apr. 29, 2026); *Johnson v. Young*, No. 12-CV-2339, 2013 WL 1571938, at *2 (W.D. La. Feb. 11, 2013) (the argument that the Jamaican consulate had not yet refused to issue travel documents was insufficient to meet the Government's burden), *report and recommendation adopted in part and petition dismissed as moot*, 2013 WL 1571272 (W.D. La. Apr. 12, 2013); *Fermine v. Dir. of Immigr. & Customs Enf't*, No. 2:06-CV-1578, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (finding no significant likelihood of removal in the reasonably foreseeable future where ICE was continuing efforts to obtain a travel document, and Trinidad had not yet refused the request).

guidance. *See Zadvydas*, 533 U.S. at 701; *cf. Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) (construing § 1252(f)(1)'s limit on class-wide injunctive relief).

Therefore, the controlling question remains whether the record indicates that removal is actually likely. *See Puertas-Mendoza v. Bondi*, No. SA-25-CA-00890-XR, 2025 WL 3142089, at *3–4 (W.D. Tex. Oct. 22, 2025). This record contains no evidence that removal to Afghanistan or to any third country is, or ever was, likely to occur. No country has agreed to accept Petitioner, no removal has been scheduled, and the record identifies no travel authorization, diplomatic clearance, or other indication of assent from Afghanistan or any prospective third country.[5]

Likewise, the fact that Petitioner's case has been elevated for consideration under a third-country removal agreement shows that the Government intends to continue its removal efforts. Again, relief under *Zadvydas* is warranted because the Government has not shown that any third country has agreed, or is likely to agree, to Petitioner's removal, or that removal is otherwise likely to occur. *See, e.g.*, *Safari v. Blanche*, No. SA-26-CV-0481-FB, 2026 WL 2427084 (W.D. Tex. Aug. 18, 2026) (granting habeas relief where petitioner, an Afghan national whose removal had been

---

[5] *See Alamrew v. Morgan*, No. CV 26-0871, 2026 WL 2561672, at *3 (W.D. La. June 22, 2026) (finding persuasive the argument that the declaration did not establish that any country had agreed to accept the petitioner or identify a scheduled removal flight, an approved removal form, or a country under active negotiation); *Takletsadik v. Patterson*, No. 3:26-CV-00517, 2026 WL 1883948, at *5 (W.D. La. June 15, 2026) (finding no "concrete plan for removal" where the declaration stated only that ERO "continues to work" with the Department of State and Headquarters to identify an alternative country). "[A] remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Nguyen v. Noem*, 2026 WL 237282, at *9 (citing *Balouch v. Bondi*, No. 9:25-CV-216, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted)).

withheld absent evidence of progress toward third-country removal); *Morrad v. Warden of Prairieland Det. Ctr.*, No. 3:26-CV-0845-X-BK, 2026 WL 2087368, at *18–19 (N.D. Tex. July 20, 2026) (same).[6]

Whatever latitude § 1231(a)(6) affords the Government for temporary, good-faith efforts to secure travel documents or arrange third-country removal, it does not authorize indefinite civil detention based on the Government's intentions or the general possibility of removal. *See Zadvydas*, 533 U.S. at 689–701.

## III. Conclusion

Petitioner has shown that there is no significant likelihood of his removal in the reasonably foreseeable future. The Government has not rebutted that showing. Petitioner's continued detention is no longer authorized by § 1231(a)(6). *See Zadvydas*, 533 U.S. at 699. Therefore,

IT IS RECOMMENDED that the Petition (ECF No. 1) be GRANTED and that Petitioner be RELEASED from custody within seven days under appropriate conditions of supervision.

---

[6] That evidentiary gap is always material, and often decisive. Other courts have found similar ICE declarations insufficient when merely reciting the mechanics of third-country removal, or relaying an officer's unsupported belief that a receiving country may ultimately assent. *See, e.g.*, *Rodriguez-Ramos v. Warden, Baker Cnty. Det. Ctr.*, No. 3:26-CV-658-JEP-LLL, 2026 WL 1091016, at *3 (M.D. Fla. Apr. 22, 2026) (declaration described the general process and gave no timeline or indication of Mexico's final acceptance); *Valdes-Oviedo v. Immigr. & Customs Enf't Field Off. Dir.*, No. C25-2720-KKE, 2026 WL 353266, at *3 (W.D. Wash. Feb. 9, 2026) (single unsubstantiated statement of ICE's belief about Mexico insufficient); *Villanueva v. Tate*, 801 F. Supp. 3d 689 (S.D. Tex. 2025) (generalized assertions, unaccompanied by any identified receiving country or changed circumstance, do not make removal reasonably foreseeable).

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Monday, October 5, 2026.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE